McBRIDE, Judge.
This appeal, which involves only a question of fact, was taken by plaintiff, Ivy Blanchard, from a judgment dismissing his suit wherein he seeks to recover from Lane Cotton Mills Company, his former employer, and its insurance carrier, American Mutual Liability Insurance Company, workman’s compensation at the rate of $20 per week for a period of 400 weeks, plus medical expenses. The petition alleges that Blanchard sustained accidental injuries in the plant of Lane Cotton Mills Company during the course and scope of his employment, which rendered him totally and permanently disabled from doing work of any reasonable character. Defendants denied that plaintiff met with the alleged accident.
Blanchard worked on a shift which began at 3:30 o’clock in the afternoon and ended at 1:00 o’clock in the morning, and the alleged injury is supposed to have occurred after 1:00 a. m. on September 16, 1947, while Blanchard was working overtime. His regular job was that of “harness cleaner,” and we gather from the record that his duties were to clean frames by the use of an air hose. On the night in question, Blanchard was permitted to work overtime, not at his regular job, but at moving warps, which weighed approximately 3S0 pounds each, from one place in the mill to another on a two-wheel hand truck.
Plaintiff testified:
“A. Well, I was cleaning harnesses, I was working from 3:30 until 1:00 o’clock in the morning. They had a nigger rolling warps and they come to me to roll warps. I said my job was cleaning harness. He asked me to roll warps in place. I rolled one and made out fine. The second one I tried to bring to the hole is when I messed ■up.- I missed the hole and went against the wall and wedged against my stomach. I hollered for help. Ida Benoit and another lady saw it, I don’t know why she wouldn’t witness for me. Then that man he came there and took the warp off of me. That was between 12:30 and 1:00 o’clock. Vincent Cuadrado was the one who helped me. I went back and tried to roll another warp, *352 and I can’t call this man’s name, I think ‘Mice’ — the second one.
“By the Court: Let the record show that he points out Mr. Maus.
“(Witness) Yes, he come there and stood it up for me. I took another and the nigger raised it up for me. I told him I believed I hurt myself. I went on to get more and that man Maus told me to get a broom and sweep. It was 3 :00 o’clock and I went in. * * ‡»
Blanchard did not report for work on the afternoon of September 16. He stated that on September 17 he visited “a doctor on Louisiana Avenue,” whose name he did not know, and that this doctor told him that •he was ruptured and required an operation, and that the doctor made arrangements for his admission to the charity ward of Touro Infirmary of New Orleans, where the operation was performed on September 18.
On September 17, after having seen the “doctor on Louisiana Avenue,” Blanchard, accompanied by his common-law wife, Ida Benoit, who is also an employee of the mill, went to the Lane Cotton Mills Company and saw Joe Lala, an overseer. Both Blanchard and Ida Benoit testified that Blanc-hard told Lala that he was ruptured and had to be operated upon, and that he would like to have his old job back after the operation. They each agree that Blanchard did not tell Lala how or where he had been hurt, yet Blanchard testified that Lala “hollered at me and said that I would have to prove it that I got hurt at the Lane Cotton Mills.” Ida Benoit stated that Blanchard replied “that he didn’t want to prove nothing now.”
We are at a complete loss to reconcile this testimony. Unless something was said to Lala about Blanchard’s having met with an accident in the mill, there was no rhyme or reason why Lala should have mentioned that Blanchard would have to produce proof that he had been hurt there.
Lala’s version of what transpired is:
“Q. When he told you that he had to be operated on, what was the over-all conversation? A. Well, he said that he had to be operated on and had to go to the hospital that he was ruptured. I asked him if he reported the rupture to the nurse and he told me, no. I said, ‘did you get ruptured at the mill’ and he said ‘yes, sir’, then I said, ‘tell me how and shpw me how, so I can make a report on it’, then the man told me that he-didn’t get ruptured in the mill but somewhere else.
“Q. Did you tell him that he had to prove that he was ru-ptured in the mill ? A. No, sir, all a hand has to do is tell me that he is sick or has had an accident and I refer him to the first aid. That’s all he has to do.”
As to the actual occurrence of the accident, besides the testimony of Blanchard we have that of Vincent Cuadrado, a workman in the mill, and Ida Benoit. The former testified that on the night of the alleged accident he “heard somebody hollering,” and turned around and saw Blanchard struggling with a warp. He lifted the warp off Blanchard and laid it in the rack, then returned to his work bench. Ida Ben-oit says she saw Cuadrado lift the warp off Blanchard.
Maus, a foreman at the mill, who, Blanchard stated, told him after the accident “to get a broom and sweep,” denied that he knew anything about an accident having occurred at the mill at the time in question, and said that the first knowledge he had of Blanchard being ruptured was on the afternoon that Blanchard called to see Lala, when Blanchard stated to him that he was going to be operated upon. Maus stated emphatically that Blanchard did not mention to him when or where he had been injured.
Bolotte, another employee, testified that he also spoke to Blanchard that afternoon, and that Blanchard told him he did not get ■hurt at the Lane Cotton Mills.
Plaintiff admits that he made no report of the alleged accident to anyone in authority at the mill on the night on which he claims he was injured, nor did he go to first aid. Neither did he report the alleged accident and injury to anyone in authority the following day. Both Blanchard and Ida Benoit admit that when Blanchard spoke to Lala, two days after the supposed accident, he did not mention to Lala when *353 or how he had been injured, although he had employed the “doctor on Louisiana Avenue” and had already arranged plans to undergo the operation. No demand was ever made by Blanchard for medical aid, and no demand for compensation was made, except through an attorney, more than two months after the alleged accident.
The testimony of plaintiff and his two witnesses makes no favorable impression upon us; on the contrary, the testimony-leads us to the firm belief that Blanchard did not meet with an accident in the Lane Cotton Mills, but sustained the rupture at some other place and in some other manner.
We are bolstered in this opinion by the evidence of Calvin J. Chambers, a foreman, the gist of whose testimony is that on the first day that Blanchard came to work at the mill, he was sent to Chambers to learn “warp tieing,” and Blanchard was put to work as a “learner.” About-half an hour or so afterward, Blanchard came to Chambers complaining that he could -not handle the job, and when asked why, he said “he couldn’t do it because he was ruptured.” Blanchard was thereupon assigned to the lighter Job of cleaning harnesses.
The trial judge, according to his assigned written reasons- for judgment, concluded that the plaintiff did not make out his case, mentioning specifically that he believed the testimony of the defense witnesses, Lala, Mans, Bolotte, and Chambers.
The finding of the lower court is fully supported by the record, and, accordingly, the judgment appealed from is affirmed.
Affirmed.